UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAWN TREMLIN,<br><br>          Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security Administration,<br><br>          Defendant. | CASE NO.   C03-3923RM<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 1, 2005 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been fully briefed, and oral argument was heard on December 23, 2003. After reviewing the record, the undersigned recommends that the Court affirm the administration's denial of benefits.

INTRODUCTION

Plaintiff, Dawn Tremlin, was born April 3, 1959, and she was 43 years old at the time of her Social Security hearing. Ms. Tremlin did not graduate from high school, but did earn a General Equivalency Degree (GED) in 1980. She also took classes in hotel/motel management in 1979. Ms. Tremlin has past work experience as a housekeeper from 1986 to 1988, an assistant manager and desk clerk in an apartment complex from 1988 to 1989, and as a manager of a espresso cart from 1992 to 1994. Ms. Tremlin has along history of drug addiction and abuse.

Plaintiff filed her application for disability insurance benefits (Tr. 141) and her application for SSI disability benefits (Tr. 306) on February 5, 2001, based on protective filing (Tr. 140). Plaintiff alleged

REPORT AND RECOMMENDATION
Page - 1

disability since August 21, 1994 due to osteomylitis in her right arm and arthritis in the hips and right knee (Tr. 146).

Plaintiff's applications were denied initially (Tr. 110, 311) and upon reconsideration (Tr. 116, 316). Plaintiff filed a Request for Hearing on September 7, 2001 (Tr. 119). On May 14, 2002, Administrative Law Judge ("ALJ") John F. Bauer conducted the hearing (Tr. 47-82), where Plaintiff appeared and testified along with medical expert James M. Burnell, M.D. ALJ Bauer held a supplemental hearing on October 2, 2002, where vocational expert William Weiss testified (Tr. 83-107). On November 15, 2002, the ALJ issued a decision finding Plaintiff not disabled as defined in the Social Security Act.

The ALJ followed the requisite five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 27, Finding 2); at step two the ALJ did not accept plaintiff's alleged impairments due to arthritis, but he did find plaintiff suffered from osteomylitis, status post patellectomy, and depression (Tr. 28, Finding 3); at step three, the ALJ found Plaintiff's impairments did not meet or equal the Listings (Tr. 28, Finding 4). At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work (Tr. 28, Finding 8), and at step five, the ALJ, relying on testimony provided by the Vocational Expert, found Plaintiff capable of performing jobs that exist in significant numbers in the national economy,(Tr. 28, Finding 13). Accordingly, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of the decision and plaintiff's application for benefits was denied. (Tr. 28, Finding 14). The Appeals Council denied review (Tr. 5), making the ALJ's decision the Commissioner's final decision.

Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the final decision denying plaintiff's application for benefits. The specific issues raised are:

(1) whether the Administrative Law Judge (ALJ) properly considered the opinions of Plaintiff's treating physicians regarding disability and limitations;

(2) whether the ALJ properly assessed Plaintiff's credibility; and

(3) whether the ALJ properly evaluated the testimony of the vocational expert.

Defendant argues that the ALJ applied the proper legal standards and her findings are properly supported by substantial evidence in the record.   This court agrees.

## DISCUSSION

This Court must uphold the Secretary's determination if the Secretary applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla, but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

A. *THE ALJ PROPERLY CONSIDERED THE OPINIONS OF DR. ROBIEN AND DR. EARLY*

There are three types of medical sources: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  Holohan v. Massanari, 246 F.3d 1195, 1201-1202 (9th Cir. 2001). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the Claimant.  Winans v. Bowen, 849 F.2d 643, 647 (9th Cir. 1987). The ALJ may reject the opinion of a treating or examining physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995).  If the treating or examining physician's opinion is uncontroverted, the ALJ's reasons for rejecting the opinion must be clear and convincing.  Id.   The ALJ may credit the testimony of an examining consultative physician and a nonexamining physician who is subject to cross-examination, even though they may reach different conclusions than the treating physician.  Id.   Ultimately, the ALJ is responsible for reviewing the medical evidence, determining the weight to be given to physician's opinions.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

1    The ALJ summarized plaintiff's medical history in his decision. He specifically noted the treatment records of Dr. Robien and Dr. Early within the context of Ms. Tremlin's medical history. The ALJ specifically referred to Dr. Robien's September 21, 2000, note indicating Plaintiff's right arm condition which had an improved appearance and no detectable change in her wrist and hand function. (Tr. 252) Dr. Robien noted no major findings of the progressive disease." Id. With regard to Dr. Early, the ALJ discussed her November 16, 2001, December 10, 2001, and March 28, 2002, records. (Tr. 21) The ALJ explained Dr. Early's insistence that Ms. Tremlin strictly follow her directions while she was taking part in a methadone treatment schedule. Dr. Early noted Mr. Tremlin's depression may be helped with better control of her pain. The ALJ's decision reflects Ms. Tremlin's failure to follow the doctor's directions, as she was self-adjusting the dosage. (Tr. 291)

The ALJ wrote the following at the conclusion of his summary of the medical evidence:

> After considering all the medical evidence, including the treating physicians' opinions and the state agency medical consultant's evaluations, I give the opinion of the medical expert great weight. Dr. Burnell is the only medical expert who has evaluated all the evidence of record, which contains additional evidence not considered by the state agency medical consultant. Even the claimant's treating physicians have not had the benefit of review all the medical evidence when making their conclusions regarding the claimant's functional ability. Additionally, I must consider the medical expert's opinion that her treating physicians may be motivated to obtain medical treatment for the claimant when they painted a grim picture of her medical condition in their reports, a picture that was not supported by their own office treatment records, nor those of consulting examiners. Additionally, the medical expert listened to the claimant's testimony; his opinion of the record did not change once her testimony was complete.
>
> The medical expert testified that there was no radiographic support for the claimant's allegations of arthritis in her hip, knees, and left hand. I carefully reviewed the medical evidence, and I concur with Dr. Burnell's conclusion. Therefore, I find there is no evidence showing any arthritic condition in the record and I will not consider the claimant's symptoms from these alleged impairments further.
>
> The medical evidence shows the claimant suffers from patellectomy, osteomyelitis and depression. These impairments impose significant limitations in the claimants's ability to perform basic physical and metal work-related impairments and are, therefore, "severe" within the meaning of the Regulations.

(Tr. 22).

After considering the parties arguments and reviewing the record, the court finds the ALJ properly considered the medical evidence. Medical expert Dr. Burnell testified concerning whether Plaintiff's condition met a Listing, and he testified that that there was little objective evidence of an inflammatory process to support Plaintiff's reports of pain, which were limited to her right arm (Tr. 50-54, 56, 59). The

1  ALJ also relied on the RFC assessment provided by state agency medical consultant, Alnoor Virji, M.D.,
2  on July 23, 2001 (Tr. 20, 279-84). Dr. Virji evaluated the medical evidence, Plaintiff's pain complaints, and
3  the records of her activities of daily living. She opined that Plaintiff was capable of performing light
4  exertional activities with limited right arm pushing and pulling against increased resistance, and that she
5  should avoid exposure to hazardous machinery and heights (Tr. 280-83).

6  *B. THE ALJ'S CREDIBILITY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE*

7  Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority
8  on evaluating plaintiff's subjective complaints.  Bunnell requires the ALJ findings to be properly supported
9  by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator
10 rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's
11 testimony regarding pain.'"  Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215
12 (11th Cir. 1991)).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform
13 household chores and other activities that involve many of the same physical tasks as a particular type of
14 job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen,
15 *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require
16 that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be
17 easily transferrable to a work environment where it might be impossible to rest periodically.  The ALJ is
18 responsible for determining credibility, resolving conflicts in medical testimony, and for resolving
19 ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

20 Here, the ALJ concluded that Plaintiff's allegations concerning her limitations were not
21 entirely credible. (Tr. 28). After carefully outlining plaintiff's testimony at the hearing and specific
22 portions of the record, the ALJ specifically concluded, "Considering the claimant's drug use, her drug
23 seeking behavior, and her lack of consistent follow through with treatment regimen, as well as her
24 complaints of arthritis in the knees, hips, and left hand when there is no evidence that such a disease
25 process has ever been documented, I find that her allegations are not credible." (Tr. 25).

26 The ALJ's findings are properly supported.  As discussed above, the ALJ properly concluded that
27 Plaintiff complaint of arthritis in the knees, hips, and left hand was insufficient.  There was no evidence that
28 such a disease process had ever been documented (Tr. 25). The ALJ noted that the medical expert testified

that there was no radiographic support for the allegations of arthritis (Tr. 22, 81). The cited Plaintiff's history of cocaine and heroin abuse and buying methadone on the street long before it was prescribed for pain control. Plaintiff testified that she stopped using heroin in September 1998 (Tr. 60), but the ALJ noted that while hospitalized in January 1999, toxicology screening was positive for cocaine, opiates, and cannabis (Tr. 25, 203). Hospital records indicated heroin abuse as a discharge diagnosis and noted Plaintiff's report that she did not have food in her house and had used money to obtain narcotics (Tr. 25, 194, 196). The ALJ further noted Plaintiff's report that she was buying methadone off the street and that she was taking much higher doses of the medication than was prescribed (Tr. 25, 275, 291). He further noted that in May 1997, she left the hospital without being treated, and in January 1999, she left the hospital without notifying hospital or police personnel (Tr. 25, 242-45). In September 1998, Plaintiff refused mental health assistance and was unwilling to discuss options (Tr. 18, 238).

*C. THE ALJ'S PROPERLY RELIED ON THE VOCATIONAL EXPERT'S TESTIMONY*

. At step five, the burden shifts to the Commissioner to show that a claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1560(c), 416.960(c). There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that a claimant can perform: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines (the Guidelines) at 20 C.F.R. pt. 404, subpt. P. app. 2. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). If the ALJ chooses to rely upon a vocational expert at step five, he must propose a hypothetical question that is based on medical assumptions supported by substantial evidence in the record that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2000). Where there is conflicting evidence the ALJ may resolve such conflicts, and the ALJ's findings must be upheld where the weight of the medical evidence supports the hypothetical questions posed by the ALJ. Martinez v. Heckler, 807 F.2d 771 (9th Cir. 1986)

Here, the ALJ found that Plaintiff maintained the residual functional capacity to lift and carry 10 pounds occasionally and 20 pounds frequently, 2 sit for 6 hours in an 8-hour workday, and stand and walk up to 6 hours in an 8-hour workday, with no climbing ladders or scaffolds, and limited to occasional use of

her right dominant arm for handling or gross manipulation. She further had a nonexertional limitation to performing simple, routine tasks (Tr. 25). As discussed above, the properly evaluated the medical evidence which supports this assessment.

Plaintiff argues the ALJ's reliance on the VE's testimony is flawed due to the ALJ's failure to include all limitations alleged by Plaintiff. As discussed above, the ALJ did not include limitations based on Plaintiff's alleged arthritic condition, and the ALJ did not credit all of plaintiff's alleged limitations. The ALJ did not accept Plaintiff's allegations of frequent crying spells, inability to concentrate, forgetfulness, poor hygiene, tardiness, or absences because they were not supported by record evidence (Tr. 27).

The ALJ, in a written interrogatory, gave the VE the following hypothetical: 42-year old; high school education; limited to light work; should not use ladders/scaffolds; limited to occasional use of her right dominant arm for handling (gross manipulation); and any possible jobs should not involve more than simple routine tasks (Tr. 173-74). The VE, in his response to the interrogatory, stated that Plaintiff had transferable skills, and identified four occupations that would be consistent with the stated hypothetical: (1) telephone solicitor (sedentary; semi-skilled; 588,000 jobs in the U.S. and 150,000 in the Western Region); (2) telephone answering operator (sedentary; semi-skilled; 1,293,000 U.S., 323,000 Western Region); (3) semi-conductor bonder (sedentary; unskilled; 58,000 U.S., 15,000 Western Region); (4) charge account clerk (sedentary; unskilled; 108,000 U.S., 27,000 Western Region) (Tr. 173-74). He identified his source as the U.S. Department of Labor Dictionary of Occupational Titles (D.O.T.) by giving the applicable D.O.T. numbers (Tr. 174). At the supplemental hearing, the VE testified that if such an individual would need to do a lot of fine manipulation (e.g., keyboard entry), she could not perform the telephone solicitor job, and possibly not the telephone answerer, if it required more than occasional fine manipulation (Tr. 90-94). She could do the charge account clerk job, which required only occasional fine manipulation, and the semi-conductor bonder job (Tr. 92, 95). The VE later eliminated the telephone answerer job if it required use of the right hand a third of the time, to take notes (Tr. 102). The ALJ concluded that Plaintiff retained the residual functional capacity to perform the job duties of charge account clerk, telephone solicitor, and semi-conductor bonder (Tr. 27). Although it is not clear whether the ALJ concluded that the telephone solicitor position actually required only simple or occasional fine manipulation (keyboarding), the remaining two occupations are sufficient for a finding that Plaintiff is capable of performing jobs that are

available in significant numbers in the national economy (Tr. 27). See 20 C.F.R. §§ 404.1566, 416.966.

## **CONCLUSION**

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 1, 2005**, as noted in the caption.

DATED this 7th day of March, 2005.

                                          */s/ J. Kelley Arnold*
                                          J. Kelley Arnold
                                          U.S. Magistrate Judge